UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESUS ALCAZAR, *et. al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE CORPORATION OF THE CATHOLIC ARCHBISHOP OF SEATTLE, *et. al.*, <br><br> Defendants. | CASE NO. CV06-00281RSM <br><br> ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

## **I. INTRODUCTION**

This matter is before the Court for consideration of a Rule 12 (c) motion for judgment on the pleadings filed by defendant Catholic Archbishop of Seattle (the Archdiocese). (Dkt. #22). The Archdiocese argues that litigating plaintiffs' claims would violate the First Amendment. Plaintiffs have opposed the motion, and the matter has been fully considered.

For the reasons set forth below, defendant's motion shall be GRANTED IN PART, and DENIED IN PART.

## **II. DISCUSSION**

**A. Background**

Plaintiffs Jesus Alcazar and Cesar Rosas began seminary school in Mexico in 1995 and now

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS
PAGE - 1

reside in Snohomish County, Washington. Plaintiffs were invited to St. Mary Parish in Marysville, Washington in 2002. They were under the supervision of Fr. Horatio Yanez, leader of the St. Mary Parish.

Plaintiffs were assigned different positions at the St. Mary Parish. Plaintiff Alcazar was a Hispanic minister with the duties of assisting the priest during Mass, answering the phone for the Parish, working with the Parish youth group, and setting appointments for couples seeking marriage counseling. Plaintiff Rosas assisted the priest during Mass, and performed maintenance work at the Parish.

Plaintiff Alcazar alleges that he received sexually explicit emails and videos from Fr. Yanez on several occasions. Alcazar also alleges that Fr. Yanez repeatedly asked Alcazar to have dinner with him, told Alcazar that he was very handsome, dedicated songs to Alcazar and told Alcazar that he believed the Church should accept homosexuals. Fr. Yanez also allegedly made sexual advances toward Alcazar on two different spiritual retreats in 2002.

Alcazar complained about Fr. Yanez's behavior to the Archdiocese in January of 2004. Plaintiffs were both transferred from the St. Mary Parish to St. Benedict's Church in Seattle after the report was made, and defendant began an internal investigation into plaintiffs' allegations. After fifteen days at St. Benedict's, plaintiffs were informed by the Archdiocese that they would no longer be able to stay in the church accommodations provided them. Defendant also allegedly offered to pay for plaintiffs to return to Mexico and for whatever counseling they needed. Plaintiffs did not accept this offer and their positions were terminated.

Plaintiffs filed complaints with the Equal Employment Opportunity Commission ("EEOC") alleging they were discriminated against because of gender and national origin in the form of sexual harassment and retaliation. They received right to sue letters from the EEOC in early 2004. Plaintiffs gave the Archdiocese notice of their intent to sue and the parties executed an agreement tolling the time limit for initiating their lawsuit. Plaintiffs then filed suit in Snohomish County

Superior Court.

In their complaint, plaintiffs allege gender discrimination and retaliation in violation of Title VII; assault and battery; reckless and negligent infliction of emotional distress; negligent hiring, retention and supervision of employees; and violations of the Washington Minimum Wage Act. Defendant removed the case to this Court on the basis of the federal Title VII claims. After defendant made the present motion, plaintiff moved to amend the Complaint to delete certain claims and add a new claim. These will be addressed below.

**B. Legal Standard**

Defendant moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990)(citing *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984)). In evaluating a motion for judgment on the pleadings, all factual allegations made in the complaint are taken as true, and those allegations in the answer that contradict a plaintiff's facts are treated as false. *Hal Roach Studios*, 896 F.2d at 1550; *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004)(citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 & n.2 (9th Cir. 1992)). "A judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a matter of law." *Westland Water Dist. v. Firbaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993)(citing *Hal Roach Studios*, 896 F.2d at 1550).

**C. Plaintiffs' Title VII Claims**

Defendant argues that the Court cannot entertain plaintiffs' Title VII claims without infringing upon defendant's First Amendment religious rights. Defendant specifically argues that the gateway determination of whether plaintiffs were employees of the Archdiocese under Title VII is forbidden by the ministerial exception to Title VII. The Ninth Circuit has held that the Free

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS
PAGE - 3

Exercise Clause and the Establishment Clauses create a ministerial exception to Title VII, and that this exception prohibits a court from inquiring into the decisions of a religious organization concerning the hiring, firing, promotion, rate of pay, placement or any other employment related decision concerning ministers and other non-secular church employees. *Bollard v. California Province of the Society of Jesus*, 196 F.3d 940, 945-50 (9th Cir. 1999); *Elvig*, 375 F.3d at 961.

The Ninth Circuit has not directly addressed the specific question presented here, because prior cases on the ministerial exception have proceeded upon the assumption the plaintiffs were employees. E.g., *Elvig*, 375 F.3d 951; *Bollard*, 196 F.3d 940. However, the Ninth Circuit has held, along with several other circuits, that a district court may make a factual evaluation of the function of the position, rather than looking solely to ordination, in deciding whether the ministerial exception applies to a particular employee. *Elvig*, 375 F.3d at 958 (citing *Alicea-Hernadez v. Catholic Bishop of Chi.*, 320 F.3d 698, 703 (7th Cir. 2003); *EEOC v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795, 801 (4th Cir. 2000); *Starkman v. Evans*, 198 F.3d 173, 175 (5th Cir. 1999) and *EEOC v. Catholic Univ. Of Am.*, 83 F.3d 445, 463 (D.C. Cir. 1996)). This is an objective factual evaluation of the employee's position. *Id*.

While defendant's concerns regarding the Court analyzing, evaluating, and determining what it means to be a seminarian studying for the Catholic priesthood should be given close attention, this type of fact specific inquiry is not necessary at this point. Plaintiffs allege that they were recruited by the Archdiocese to serve at St. Mary Parish and that they were employees of the Parish under the direct control of Fr. Yanez. Because plaintiffs' factual assertions must be taken as true on the instant motion and any claim contrary by defendant must be disregarded by the Court, defendant's argument concerning the factual evaluations of plaintiffs position is better suited to a later motion.

*1. Application of the Ministerial Exception to Individual Claims*

The Ninth Circuit has clearly held that the Free Exercise Clause and the Establishment Clauses create a ministerial exception to Title VII. This exception prohibits a court from inquiring

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS
PAGE - 4

into the decisions of a religious organization concerning the hiring, firing, promotion, rate of pay, placement or any other employment related decision concerning ministers and other non-secular employees. *Bollard*, 196 F.3d at 945-49; *Elvig*, 375 F.3d at 961. As discussed more fully below, this restriction on evaluating the protected choices of the religious organization limits the ability of a court to inquire into Title VII claims. *Bollard*, 196 F.3d at 945-47; *Elvig*, 375 F.3d at 960-61.

Here, plaintiffs allege that they both engaged in the spiritual functions of the Church, and both assert that they assisted Fr. Yanez and were involved in conducting Mass. Because plaintiffs make these assertions, and these assertions must be accepted as true for the purposes of the instant motion, the Court finds that both plaintiffs fit within the area covered by the ministerial exception. However, this determination does not end the Court's inquiry, because application of the ministerial exception does not foreclose all employment claims against a religious employer, but simply limits them.

*2. Sexual Harassment in violation of 42 U.S.C. §2000e-2*

Plaintiffs allege that Fr. Yanez sexually harassed them, in violation of 42 U.S.C. §2000e-2, and that defendant Archdiocese is liable for Fr. Yanez's actions. To succeed on a sexual harassment claim, a plaintiff must establish a "pattern of ongoing and persistent harassment severe enough to alter the conditions of employment," in other words, a hostile work environment. *Elvig*, 375 F.3d at 959 (quoting *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998)). When a claim is made against a religious employer, a plaintiff may show he was sexually harassed and that the harassment created a hostile work environment, without offending the First Amendment. *Elvig*, 375 F.3d at 959 (citing *Bollard*, 196 F.3d at 950). Because the evaluation of a sexual harassment claim involves an entirely secular inquiry that does not intrude into areas concerning the doctrines of a religious organization, it is allowed. *Elvig*, 375 F.3d at 959.

As a general rule, an employer may be found vicariously liable under Title VII for sexual harassment when an employee establishes that the sexual harassment created a hostile work

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS
PAGE - 5

environment. *Elvig*, 375 F.3d at 959 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). Upon such a showing, there are two circumstances in which liability may be imposed. First, if the hostile work environment culminates in a tangible employment action, the employer may be held liable. *Elvig*, 375 F.3d at 959. Second, if no tangible employment action occurs, liability can still be imposed on an employer for allowing a hostile work environment to exist. However, to avoid liability in this second scenario, an employer can assert a special affirmative defense. *Id*.

This affirmative defense has two elements. First, the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior. Second, plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, or otherwise failed to avoid the alleged harm. *Ellerth*, 524 U.S. at 756; *Faragher*, 524 U.S. at 808; *Elvig*, 375 F.3d at 959; *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 877 (9th Cir. 2001). The success of this defense requires a court to perform a fact-specific inquiry into the actions of both the employer and the employee. *Elvig*, 375 F.3d at 959. However, the power of a court to conduct this inquiry is limited when a sexual harassment claim is made against a religious employer by an employee covered by the ministerial exception. *Id*.

Here, as a preliminary matter, there is no factual support for plaintiff Rosas' claim of sexual harassment against Fr. Yanez, even when taking plaintiffs' asserted facts as true. There are no facts alleged to support a claim that plaintiff Rosas was ever subjected to sexual harassment, or was ever even present when Alcazar was allegedly being harassed. Plaintiffs claim that Rosas was told by Alcazar about the sexual harassment and that Rosas told the Archdiocese that these actions were wrong and immoral, but there is not a single fact to suggest that Rosas himself was sexually harassed. Based upon the facts as alleged, Rosas cannot establish a single incident of harassment, let alone a pattern of ongoing and persistent harassment, to establish the requisite hostile work environment claim. Without a sufficient assertion of material fact upon which to base his legal

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS
PAGE - 6

claim, plaintiff Rosas' sexual harassment claim must be dismissed as a matter of law.

Plaintiff Alcazar, on the other hand, alleges facts that, when taken as true, support his claim that the actions of Fr. Yanez constituted sexual harassment and could have created a hostile work environment. However, because his claim is asserted against a religious employer, Alcazar's claim must be limited. *Id*. at 960.

Alcazar is a church employee covered by the ministerial exception. Because of this, he cannot assert that the employment actions taken by defendant form the basis for the alleged tangible employment action resulting from a hostile work environment. *Bollard*, 196 F.3d at 945; *Elvig*, 375 F.3d at 960. The Archdiocese is able to choose its representatives free from government interference and in accordance with the dictates of its faith and conscience. *Elvig*, 375 F.3d at 960. Because the federal judiciary cannot evaluate whether defendant's employment decision was based on legitimate or illegitimate reasons without offending the First Amendment, such an inquiry is forbidden. *Id*. at 961 (quoting *Bollard*, 196 F.3d at 946).

However, Alcazar's sexual harassment claim may proceed, and liability be imposed on defendant, if he establishes that defendant allowed a hostile work environment to exist without taking proper action. The Ninth Circuit has held that allowing this type of inquiry does not run afoul of the First Amendment because, "[t]he only relevant decisions implicated here are [Fr. Yanez's] decision to harass [Alcazar] and [the Archdiocese's] decision not to intervene to stop or curtail the sexual harassment [Alcazar] reported." *Id*. at 963 (internal quotations omitted). While defendant may very well have asserted facts to support the *Ellerth/Faragher* affirmative defense, upon the instant motion, the evaluation of the merits of that defense is improper. *Id*. at 964.

Here, plaintiff Alcazar's sexual harassment claim must be allowed to proceed, but is limited by the First Amendment, as was plaintiff's claim in *Elvig*, to an inquiry into three areas: (1) Was Alcazar subjected to a hostile work environment? (2) If so, did defendant exercise reasonable care to correct that environment? (3) Did Alcazar unreasonably fail to avail himself of those measures?

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS
PAGE - 7

*Elvig*, 375 F.3d at 964.

Because there remain some valid questions and issues of material fact in regards to Alcazar's sexual harassment claim, defendant's motion to dismiss plaintiffs' sexual harassment claim shall be granted in part and denied in part. It is granted regarding any claim made by plaintiff Rosas, but denied regarding plaintiff Alcazar, pursuant to the limited remaining inquiry discussed above.

### 3. Retaliation in violation of 42 U.S.C. §2000e-3

Plaintiffs also allege that defendant improperly retaliated against them for complaining about the sexual harassment by Fr. Yanez. The alleged retaliation consists of defendant transferring plaintiffs to St. Benedict's in Seattle, reducing their duties once transferred, and ultimately terminating their employment.

To make a *prima facie* case of retaliation under Title VII, 42 U.S.C. §2000e-3, plaintiffs must show that they engaged in a protected activity, that they suffered an adverse employment action and that there was a casual link between the activity and the employment decision. *Elvig*, 375 F.3d at 965 (citing *Stegall v. Citadel Broad. Co.*, 350 F.3d 1185, 1197 (9th Cir. 2003).

Here, plaintiffs allege that the adverse employment actions they suffered were their transfers from one parish to another, the reduction in their duties, and their ultimate termination. While plaintiffs allege facts sufficient to satisfy the first element of their *prima facie* case, they are prohibited from asking the Court to evaluate the remaining two. As discussed above, decisions concerning promotions, transfers, rates of pay, selection of assignments, and duties performed are all protected-choice matters of church administration, and the Court is prohibited from evaluating them. *Elvig*, 375 F.3d at 961 (citing *Bollard*, 196 F.3d at 947). Plaintiffs are "foreclosed, as a matter of law, from relying on these protected decisions as acts of retaliation." *Elvig*, 375 F.2d at 965. Because the only retaliation alleged by plaintiffs involves defendant's First Amendment protected employment decisions, plaintiffs' retaliation claims must fail as a matter of law.

### D. Plaintiffs' Negligent Hiring, Retention, and Supervision Claims

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS
PAGE - 8

As a preliminary matter, plaintiffs concede that Rosas' claim for negligent hiring, retention and supervision should be dismissed. They argue, however, that Alcazar may pursue his state law negligence claim consistent with the principles of the ministerial exception.

The Court in *Bollard* stated:

> The ministerial exception to Title VII is based not upon Title VII but, rather, on the First Amendment. Just as there is a ministerial exception to Title VII, there must also be a ministerial exception to any state law cause of action that would otherwise impinge on the church's prerogative to choose its ministers or to exercise its religious beliefs in the context of employing its ministers.

196 F.3d at 950. Defendant contends that this rule forecloses plaintiffs' negligent hiring, retention and supervision claims.

In opposition to this motion, plaintiffs cite the proposition that, "a church may hire, fire, promote, refuse to promote and prescribe the duties of its ministers, free from judicial scrutiny . . . [and the church] need advance no justification, religious or otherwise, for such actions." (Dkt. #24 at 10)(citing *Elvig v. Calvin Presbyterian Church*, 397 F.3d 790, 795 (9th Cir. 2005) (Fletcher, J., concurring in denial of hearing *en banc*)). This quotation makes clear what is prohibited from review by the ministerial exception and *Bollard* makes clear that the ministerial exception applies equally to any state claim in which protected employment choices of religious organizations are subject to scrutiny.

Here, the very nature of plaintiff Alcazar's negligence claim would require the Court to evaluate the reasonableness of defendant's protected employment choices in order to ascertain if it breached any duty owed plaintiff. This type of inquiry, prompted by a state claim, is prohibited by the First Amendment's ministerial exception. *Bollard*, 196 F.3d at 950.

Because plaintiffs cannot ask the Court to evaluate and scrutinize the protected employment decisions of defendant in regards to the hiring, retention and supervision of Fr. Yanez, defendant's motion to dismiss this claim shall be granted.

**E. Assault and Battery**

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS
PAGE - 9

Plaintiffs claim that defendant is vicariously liable for the alleged assault and battery on plaintiff Alcazar by Fr. Yanez. In response to the instant motion, however, plaintiffs concede that their claims against the Archdiocese should be dismissed. Therefore, the Court will grant defendant's motion regarding this claim.

**F. Reckless or Negligent Infliction of Emotional Distress**

Plaintiffs claim that Fr. Yanez inflicted emotional distress upon them and that the Archdiocese is vicariously liable for the alleged harm suffered. In moving to dismiss this claim, defendant argues that an employer cannot be held vicariously responsible for the intentional acts of its employees and therefore, any claim against defendant must be dismissed as a matter of law.

Under Washington law, an intentional act gives rise to the tort of intentional infliction of emotional distress, not negligent or reckless infliction of emotional distress. *St. Michelle v. Robinson*, 52 Wash. App. 309, 316 (1988). If the alleged tort that created the emotional distress was done intentionally, then the plaintiff must plead that the emotional distress was inflicted intentionally. *Id*. Here, because plaintiffs allege that Fr. Yanez intentionally subjected them to sexual harassment, any infliction of emotional distress by Fr. Yanez must also have been inflicted intentionally. Plaintiffs have improperly pled by alleging that Fr. Yanez recklessly or negligently inflicted emotional distress upon them. The claim of negligent infliction of emotional distress must accordingly be dismissed.

Even if plaintiffs had properly plead that Fr. Yanez intentionally inflicted emotional distress upon them, the claim against the Archdiocese must be dismissed. Under Washington law, an employer is shielded from liability when their employees commit intentional acts of sexual misconduct. *C.J.C v. Corp. of Catholic Bishop of Yakima*, 138 Wash 2d 699 (1999); *Niece v. Elmview Group Home*, 131 Wash. 2d 39, 55 (1997)("Vicarious liability for intentional or criminal actions of employees would be incompatible with recent Washington cases."). As the Archdiocese may not be held vicariously liable for the acts of Fr. Yanez, defendant's motion concerning this

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS
PAGE - 10

claim shall be granted.

### G. Minimum Wage Claim

The Archdiocese moves to dismiss plaintiffs' claims regarding the Washington Minimum Wage Act, RCW 49.46.130. These state law claims concern decisions regarding the rate of pay for non-secular church employees and must also be dismissed under the ministerial exception. The Ninth Circuit held that the ministerial exception applies to both state and federal claims, and prohibits a court from inquiring into the decisions of a religious organization concerning the hiring, firing, promotion, rate of pay, placement or any other employment related decision concerning ministers and other non-secular church employees. *Bollard*, 196 F.3d at 950; *Elvig*, 375 F.3d at 961. This most certainly includes questions concerning the amount of compensation owed a visiting seminarian student. Because the Court is prohibited from inquiring into the defendant's employment decisions, defendant's motion concerning this claim is also granted.

### H. Outrage

Plaintiffs have sought leave to amend their complaint to add the claim of outrage against the Archdiocese. To prove a claim of outrage there must be extreme or outrageous conduct, intentional or reckless infliction of emotional distress and an actual result of severe emotional distress on the plaintiff. *Robel v. Roundup Corp.*, 148 Wash. 2d 35, 51 (2002); *Rice v. Janovich*, 109 Wash. 2d 48, 61 (1987).

Here, even taking the facts plaintiffs pled as true, they do not support a claim for outrage against the Archdiocese. Plaintiffs seek to amend their complaint to allege new facts that defendant reported plaintiffs to the immigration authorities after their employment was terminated. Plaintiffs contend that this conduct was outrageous. The first element of a claim of outrage requires proof that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Robel*, 148 Wash. 2d at 51. In order to allow such a claim to proceed, there must be

a possibility that reasonable minds could differ on whether the conduct is sufficiently extreme and outrageous to result in liability. *Id*. at 51-52; *Kloepfel v. Baker*, 149 Wash. 2d 192 (1993).

Here, even taking the amended facts alleged as true, there is no possibility that reasonable minds could find that the Archdiocese's reporting of plaintiffs to immigration authorities could be seen as conduct that is beyond all possible bounds of decency. Reporting persons who may be in this country illegally to the authorities is not conduct so extreme as to be unacceptable in civilized society. As a matter of law, reasonable minds could not differ as to whether providing notice to the proper authorities concerning suspected immigration violations rises to a level of outrage. The Court therefore declines to grant leave to amend to add this claim.

### III. CONCLUSION

Based on the foregoing, defendant Archdiocese's motion for judgment on the pleadings (Dkt. #22) is GRANTED IN PART. As set forth above, all claims by plaintiff Rosas are hereby DISMISSED. All of plaintiff Alcazar's claims are also DISMISSED, except for his Title VII sexual harassment/hostile work environment claim. Plaintiffs' two motions for leave to amend the Complaint (Dkt. #26, 28) are DENIED as moot.

DATED this 21st day of December, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE